No. 15,515.

SCHOOL DISTRICT NO. 47, JEFFERSON COUNTY
v. JUCHEM, SUPERINTENDENT OF SCHOOLS.
(155 P. [2d] 768)

Decided December 18, 1944.

Messrs. ALTER & UPTON, Mr. HARRY A. KING, for plaintiff in error.

Messrs. SIMON & LEE, for defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

A PROCEEDING instituted by plaintiff in error, an organized school district of the first class in Jefferson county, known as No. 47, to enjoin defendant in error, the superintendent of schools in said county, from taking threatened action looking to the annexation to plaintiff in error of an adjoining organized school district of the third class, No. 50, in the same county. The petition for a writ of injunction was dismissed.

In justification of her purposed action, not denied, defendant in error pleaded section 64, chapter 146, '35 C.S.A., and, quoting therefrom, alleged that school district No. 50 "will be unable to maintain a school of reasonable standard during the next ensuing year." The important portion of that section, the parts of which the parties regard as particularly pertinent to the principal question, and which we italicize, and the part having to

do with the calling of an election involved in the proceeding, being capitalized, reads: "Whenever a third class district fails to maintain a school for a period of one (1) year or more, or whenever the school population of the preceding year in such districts shall be less than ten, *or whenever the local economic conditions are such that in the opinion of the county superintendent of schools any district within the county will be unable to maintain a school of reasonable standard during the next ensuing year,* the question of the dissolution of said district and of the annexation of such territory to an adjoining district or districts shall be determined by submitting the question to the electors of the said first mentioned district upon the motion of the board of directors of said district or upon the petition of not less than one-fourth of the qualified electors WHICH ELECTION SHALL BE CALLED FOR THAT PURPOSE BY THE COUNTY SUPERINTENDENT OF SCHOOLS *within thirty days from the filing of said petition with such official.*

*"Such election shall be held, notices posted and returns canvassed as provided by law for elections on the question of creating a bonded indebtedness in school districts of the third class as far as the same are applicable* UNLESS OTHERWISE PROVIDED IN THIS SECTION. Each elector voting at such election shall deposit in the ballot box a ballot whereon shall be written the words 'For dissolution of district and annexation of territory to such adjoining district or districts as will, in the judgment of the county superintendent, best promote education' and the words 'Against dissolution of district and annexation of territory to such adjoining district or districts as will, in the judgment of the county superintendent, best promote education' and shall indicate his approval or disapproval of the proposition submitted by placing a cross mark (X) opposite the group of words on his ballot which expresses his choice. *In the event a majority of the electors of the district at such election vote in favor of dissolution of the district and annexa-*

*tion, the county superintendent of schools shall annex said territory to such district or districts within the same county as shall in his judgment best promote the school interests of the territory* and shall transmit a notice of such annexation to the secretary of each school district so affected and to the county assessor of the proper county within thirty days from the date of election hereinabove provided. Said notice shall also be posted for thirty days at each school house located within such territory.

"The term of office of the board of directors of such districts as become dissolved under the terms of this section shall automatically expire upon the dissolution of the district and the secretary shall deliver to the county superintendent of schools within ten days from the date of said election the minute book, files and all other records belonging to the district; provided that such annexation of territory shall not affect or release any indebtedness of said territory, nor shall said annexing district or territory assume such outstanding indebtedness. The new board or boards shall make and certify to the board of county commissioners the amount or amounts necessary for necessary levy or levies to pay such outstanding indebtedness."

It is not claimed that school district No. 50 has failed to maintain a school for a "period of one year" immediately preceding the precipitation of the question involved, and nothing in the record suggests that at any time throughout the many years of its organized existence, has it failed to maintain a school as required by law. Neither is there any claim that the "school population of the preceding year," or ever, was "less than ten." On the contrary, as of the time important to our inquiry, the school census of that district disclosed 181 resident pupils, and a school attendance of about 145. In short, the district has not failed to maintain a school, nor is it lacking in school population. There remains the question, are the "economic conditions" in the district

such that it "will be unable to maintain a school of reasonable standard during the next ensuing year?" The county superintendent resolved that question in the affirmative, and, as we have seen, the trial court, not pausing to make findings, announced that the "injunction will be denied."

Counsel for plaintiff in error specify four points upon which they rely for a reversal of the judgment, but we find it necessary to examine only two of them. By the first specification, counsel contend the evidence does not support the county superintendent's conclusion, that school district No. 50 is in such economic condition it "will be unable to maintain a school of reasonable standard during the next ensuing year," which, as said, is the statutory test; hence, as further said, the superintendent's conclusion to that effect "was arbitrary, capricious, and unwarranted and a flagrant abuse of discretion." By the second specification, counsel contend that the election, allegedly held, and of controlling procedural importance, was not called by the county superintendent as provided by statute, a mandatory requirement, as said, and hence was void and of no effect.

It appears that school districts 47 and 50 are old organizations in Jefferson county, and, so far as appears, each has served the educational needs of its own constituency throughout the years. In addition to the first ten grades taught in each district, district 47, having a high school, offers the eleventh and twelfth grades. District 47 has three school buildings, thirty-eight teachers, and a school census of fourteen hundred seventy-two pupils, or about thirty-eight pupils per teacher, while district 50 has one school building, six teachers, and a school census of one hundred eighty-one pupils, or about thirty pupils per teacher. Congestion obtains in all buildings, and in district 50, due to the large number of classes born of the many grades taught, the teachers average two classes each. Of the school population of district 50, eighteen are taking the eleventh and twelfth

grades in district 47, on tuition paid by district 50. In district 47, the average salary of teachers is $1487.77, and in district 50, the average is $997.60. The building in district 50 is old and not of as good appointments as are the several buildings in district 47. One of the schoolrooms is in the basement, and at the season of heavy precipitation it is so wet that on occasion pumping of water therefrom is necessary. District 47 enjoys modern indoor toilet facilities, while district 50 has not so progressed. Neither district, so far as appears, is in position to accommodate more pupils, and, due to wartime restrictions, neither, presently, may construct additional buildings. In its desire to improve housing conditions, district 50 voted a bond issue, but due to the inability of the government—war conditions preventing—to "match" the district's contribution, it has been unable to make intended progress. In the meantime, and notwithstanding, it so serves that no child in the district is deprived of legally required educational advantages. District 47 is heavily bonded, while district 50 is free from bonded debt. The former's tax levy exceeds that of the latter. The officials of district 47 resort each year to the statutory privilege of raising its levy five per cent, which those of district 50 do not do.

Briefly, as seems clear, the proposed annexation would not presently, or within any definite foreseeable time, compass improved conditions. The record does not reveal that which would enable the board of the proposed consolidated district to discontinue the use of the building now being used by district 50, for, the conditions fairly appraised, either the identical pupils now attending in that building, or a substantially like number from somewhere in the proposed enlarged district, would be housed there. Briefer still, the proposal offers no hope of immediate relief.

The result of that which the county superintendent essays to order, as we are persuaded, would be abortive and unavailing, an idle gesture. Besides, how may it be

said that a school district having an enrollment of one hundred forty-five pupils; a staff of six licensed teachers—an ample number as seems conceded—and housing, not of the best nor as good as that supplied by district 47 but that has served many generations of like pupils; and a property valuation that assures the continuance of that service, is in such "economic" condition that it "will be unable to maintain a school of reasonable standard during the next ensuing year?" That the officials of district 50 have been unable to improve its housing facilities is wholly due to war conditions. Of its own prompting, it planned for better things. It voted bonds in furtherance thereof, and took every possible step to accomplish its commendable purposes. It awaits a fairer and more peaceful day. In the meantime, it is continuing to offer school facilities, not shown to be legally lacking in any particular, to the youth resident within its organized boundaries. Its prospective revenues, admittedly better than in any previous year, assure the further continuance of ample school opportunities. We cannot think that a school district without indebtedness, peopled by those who believe in education, as here, who are amply able and quite willing to finance and otherwise conduct a school as in the past, always heretofore regarded of "reasonable standard," comes within the legislative intent of the enactment which constitutes the predicate of the superintendent's threatened action. Quite beyond cavil, the contrary stands indisputably revealed.

It is urged that a highway constructed in the interest of the war effort traverses district 50 in such manner that some pupils must cross it in order to reach the school building, and that the increased hazard enters into the economic problem advanced as a basis for the proposed annexation order. The same highway crosses district 47, and it is not without disturbing effects generally; however, we do not regard that fact as having

to do with the economy of the county superintendent's statutory concern.

That the teachers of district 50 receive smaller salaries than those in district 47 is not pertinent to any problem here involved. Comprehensive statutes, familiar to teachers and school officials generally, fix the limitations which attend the several classes of school districts in that regard.

We are of opinion that the situation presented by the record does not warrant or justify the annexation order comprehended in the threatened action by defendant in error.

In view of our announced conclusion on the principal question involved, reference to the claim that the election was not legally called might well be omitted; but since it is a point likely to arise in similar proceedings, we think it advisable to announce our view that the statute very definitely requires that the call shall be made by the superintendent. Upon this point we again call attention to that portion of the quoted statute hereinbefore set out in capitals. Here, the superintendent simply directed the secretary of the school board to call the election. We regard that action as without legal authority or effect.

Let the judgment be reversed, with instructions to the trial court to issue its injunctive order as prayed.

Mr. Justice Knous and Mr. Justice Jackson dissent.

Mr. Justice Alter did not participate.